**UNITED STATES CASUALTY CO. v. EWING et al.**

No. 12432.

United States Court of Appeals Fifth Circuit.

April 28, 1949.

Rehearing Denied June 3, 1949.

L. L. Robinson, of Miami, Fla., for appellant.

Thomas H. Anderson and Morton B. Adams, both of Miami, Fla., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The suit was for additional premiums on two policies of liability insurance issued by United States Casualty Company to appellees Ewing and Mears on August 15, 1942, touching construction work which they were to do for the United States on a cost-plus basis in Puerto Rico, and which was completed in December, 1943. One policy promised to pay sums the insured might become liable for under Workmen's Compensation Laws, and particularily under the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., which had been made applicable to this work. The other policy promised to pay sums the insured might become liable for as damages by reason of accidental bodily injury or death in connection with this work. There was no fixed premium for either, but an advance deposit of $1,000 was made on the former policy and $250 on the latter, and the agreement in both policies is that the insured on the last day of each month will make a detailed statement of the actual remuneration earned by the employees during said period; the premium is then to be computed at the rates set forth in the policy and the premium so earned is to be paid to the Company at once. In each policy five kinds of work are named as to be done, with the rate applicable to each per $100 of remuneration paid: (1) Concrete Construction, (followed by details), under the Manual Code Number 5213, with a rate of 9.81 in one policy and .334 in the other; (2) Water Mains or Connections Construction, (with details), Manual Code Number 6319, Rate 7.28 on the first policy and 1.150 on the other; (3) Sewer Construction (with details), Code Number 6306, Rate 14.22 in one policy and 1.150 in the other; (4) Plumbing, (with details stated), Manual Code Number 5183, Rate 4.17 in one policy and .207 in the other; and (5) Clerical Office Employees, Manual Code Number 8810, Rate .10 in one policy and .023 in the other. The Manual is a book of rates for all kinds of work classified by code numbers, and for the various States and localities in which the participating insurers operate. It also contains machinery for adjusting rates before the policy is is-

sued, while the work is going on, and even after it is finished. The rate is of course based on the amount of liability fixed by the various laws, and the risks in the kind of work done, and in different localities. The rates named in these policies are those applicable to the described work in the State of New York, which are the highest in the United States. There are no manual rates fixed for Puerto Rico, the nearest analogy being the District of Columbia, where the Harbor Workers' Act is also of force, D.C. Code 1940, §§ 36—501, 36—502, 33 U.S.C.A. § 901 note, which rates are lower than New York's. The amount of remuneration paid to the workers is of course a main basis of the monthly premiums. Each policy also provides for a final adjustment of premiums. In the compensation policy the provision is: "The Company shall be permitted at all reasonable times during the policy to inspect the plants, works machinery and appliances covered by this policy, and to examine this employer's books at any time during the policy period, and any extension thereof, and within one year after its final expiration, *so far as they relate to the remuneration earned* by any employees while this policy was in force." The corresponding paragraph in the general liability policy says "examine and audit the books", for the same period, *"as far as they relate to the premium bases* of this policy". (Emphasis added.)

Both policies and the riders on them are countersigned by John Z. Fletcher and Associates, who are a firm shown to be the insurer's agents at Jacksonville, Florida, and both policies are countersigned also at San Juan, Puerto Rico, by Lippitt and Simonpietri, Authorized Agent. Fletcher by letter designated Lippitt and Simonpietri as the persons to whom the monthly statements of payrolls were to be sent for audit. They were sent to them, as the judge found, each with a full copy of the payroll, and a summary showing what part of the whole should be under each of the five kinds of insured work. These were returned by Lippitt and Simonpietri with their fixing of the monthly premium owing, and in most instances with the signed memorandum "Audited by Lippitt and Simonpietri".

These amounts were remitted to Fletcher and Associates. All dealings were with these representatives, and none with the home office of the insurer.

About February 23, 1944, after the Puerto Rican organization had broken up, with all records shipped via New York to Miami, and after Ewing and Mears had dissolved their partnership, and while they were about to enter upon a renegotiation and final adjustment of their contracts with the Government, Fletcher and Associates were asked for a complete statement of Ewing and Mears account, being informed that the renegotiation with the Government was in view and that income taxes were to be reported, and partnership affairs to be liquidated. The statement was promised, and a detailed account was sent, which showed, after crediting the original deposits of $1,000 and $250, a balance of premiums due of $4,329.18. Mears and Ewing each sent his check for half of it, and closed out their business accordingly.

In March, 1944, an auditor for the insurer contacted Mr. Ewing and said he wished to audit the payrolls. These had not yet reached Miami. On March 31, Fletcher and Associates wrote to explain the desire for an audit, quoting a letter from the home office to the effect that there might have been an overlapping of monthly payments, producing an overcharge, but saying nothing about changing classifications. In April Ewing said Lippitt and Simonpietri had audited them; but in August what records had arrived were exhibited; but when the auditor wished to change the classifications of the employees, thereby raising the rates, Ewing refused to go further than to check the payroll figures. Another auditor then got what records were in Miami and supplied those which were lacking from copies filed with the Government and produced an ex parte audit which more than doubled the premiums shown in the final statement of February 23. A deficit of $23,224 is now sued for; and Ewing and Mears claim an overcharge if the final statement is to be reopened.

There is not much conflict about what has so far been stated. The district judge, sitting without a jury, heard a great deal of

further testimony about the Manual, its application, the classification of work under it, and the correctness of the auditors' classifications. An expert testified for Ewing and Mears that the increase of premiums the auditor had found was due mostly to classing a lot of the work as iron and steel painting and welding tanks, under Manual Code Number 5057, which had a New York rate of $27.31 a hundred, about double the highest rate named in these policies, and is not a risk mentioned at all in them. He contended also that Harbor Workers Rates and not New York rates were proper; and if New York rates are used, that they were reduced before renewals of these policies and the reduced rates should be used thereafter; and that certain discounts were also due and not given. It seems no serious discrepancies in the remuneration paid to the employees were found. He also claimed that the Manual provided for fair and equitable rates, and means for fixing them, but neither side sought to use this rate machinery.

The judge held that the right, after the expiration of the insurance, to reexamine the books of the insured under the Compensation policy (as to which most of the unpaid premium is claimed) extends only "to the *remuneration earned* while the policy was in force" and not to reclassification of each employee's work; but in the other policy it extends "to the *premium bases* of the policy", one of which is the kind of work done. The judge offered to get an insurance assistant, as assessor, and to work out the reclassifications under that policy, though it would be very difficult after a lapse of time to tell just what particular employees, now scattered, were doing. This offer was declined by plaintiff.

The judge also held that when the insurer by its accredited agents made a final statement for the purpose of its being acted on, and it was acted on, so that an additional premium cannot now be charged to the Government as a cost of the work, the insurer is estopped to question its own statement.

We agree with these conclusions. The insurer's auditor admitted that in order to reclassify he had to know what each workman was doing each day and that he did not know, but was acting on supposition. Moreover his main reclassification under the Manual Code Number 5057 took him outside the policy, for no such work is listed in the policy as to be insured, and no rate for such was named. The policy says, "Other operations, if any, not covered hereunder". If such work was not covered, no premium is due on it.

As to the statement of February 23, the insurer argues that it was really not to be taken as final, because in it are found the words "subject to any further audit". The statement is two pages of single spaced typewriting giving all charges in one column and then a short column of credits, and among the latter is a line, "Less the following deposit premiums, (subject to any further audit), 8/15/42, U.S.Cas.W.C. 4924, Return deposit premium $1000. 8/15/42 U.S.Cas.P.L. 22493, Return deposit premium $250." Following these items the debits are totalled and the credits totalled, and the difference taken. The audit is mentioned in connection with and in the midst of the credits, and not of the debits. Ewing and Mears testified, one that he paid no attention to the words, and the other that he did not see them. They had asked for a final statement, were promised that, and Fletcher accepted payment on it. It ought to be treated as such. It was at least an account settled, and a material mistake ought to be clearly proven to upset it The judge found that no error in the premium account was proved. He also denied the counter claim of Ewing and Mears. His judgment is

Affirmed.

Order on Motion for Rehearing.

PER CURIAM.

We consider the typewritten rider to be controlling over the quotation made from the printed form of the policy.

Motion for rehearing denied.